**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-19-01223-9-PHX-JJT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Hector Ibarra-Cisneros, | |
| Defendant. | |

At issue is Defendant Hector Ibarra-Cisneros's Motion to Suppress All Directly and Derivatively Obtained Wiretap Evidence (Doc. 149, "Mot. to Suppress"), to which the Government filed a Response (Doc. 161, "Resp."), and Defendant filed a Reply (Doc. 170, "Reply"). The Court held oral argument on March 18, 2021. For the reasons that follow, the Court denies Defendant's motion.

**I.    BACKGROUND**

According to the Government, the investigation into Defendant and his codefendants began around October 2017. (Resp. at 2.) The Government alleges that Defendant and his codefendants are part of a drug trafficking organization that facilitated the movement of methamphetamine, heroin, and fentanyl from Mexico to Phoenix, Arizona. (Resp. at 3.) Over the course of this investigation, the Drug Enforcement Administration tapped telephones used by Defendant's purported organization. (*Id.*)

. . . .

. . . .

Defendant's motion concerns five of the wiretaps that were utilized during this investigation.[1] These wiretaps—Wiretaps 2, 6, 8, 9, and 10—intercepted communications attributed to Defendant. (Mot. to Suppress at 2.) According to Defendant, Wiretap 2 "violated the statutory and federal constitutional framework within which Congress and the courts permit the existence of wiretap surveillance. [And] Wiretaps 6, 8, 9 and 10 relied on evidence tainted by the illegally intercepted communications from Wiretap 2." (Mot. to Suppress at 2.) Thus, Wiretap 2 is the primary focus of Defendant's motion.

On February 27, 2017, then United States Attorney General ("AG") Jeffrey Sessions signed Order No. 3854-2017, entitled "Special Designation of Certain Officials of the Criminal Division and National Security Division to Authorize Applications for Court Orders for Interception of Wire or Oral Communications." (Mot. to Suppress, Exh. 1, "AG Sessions Order".) In it, AG Sessions designated the positions of certain Department of Justice (DOJ) officials to authorize wiretap applications to a federal judge, including "any Deputy Assistant Attorney General of the Criminal Division." (*Id.*)

On November 7, 2018, AG Sessions resigned and was replaced by Acting AG Mathew Whitaker. Acting AG Whitaker held office from November 2018 to February 14, 2019, when William Barr was confirmed as AG. (Resp. at 7.) Acting AG Whitaker did not revalidate the AG Sessions Order or issue any new special designation orders. (Mot. to Suppress at 3–4.) On March 25, 2019, AG Barr issued Order No. 4417-2019 ("AG Barr Order"), which specially designated certain officials to authorize applications for wiretaps and revoked the AG Sessions Order. (Mot. to Suppress, Exh. 3.) It also stated its purpose was "to preclude any contention that the designations by the prior [AG] have lapsed." (*Id.*)

Between November 7, 2018, and December 7, 2018, the U.S. Attorney's Office for the District of Arizona requested authorization from the DOJ seeking wiretap authorization for several phones. (Mot. to Suppress at 5.) On December 7, 2018, authorization was

---

[1] These wiretaps are captioned as follows: (1) WT-18-6-PHX-GMS (issued December 11, 2018) ("Wiretap 2"); (2) WT-19-6-PHX-GMS (issued May 7, 2019) ("Wiretap 6"); (3) WT-19-9-PHX-GMS (issued July 3, 2019) ("Wiretap 8"); (4) WT-19-11-PHX-GMS (issued August 8, 2019) ("Wiretap 9"); (5) WT-19-12-PHX-GMS (issued September 5, 2019) ("Wiretap 10").

granted by Deputy Assistant AG ("DAAG") for the Criminal Division Matthew Miner for the wiretap that would become Wiretap 2. (Mot. to Suppress at 5.) DAAG Miner signed a memorandum granting the request and cited 18 U.S.C. § 2516(1) ("the authorization statute") and the AG Sessions Order as his authority to approve the wiretap application. On December 7, 2018, Mathew Whitaker was Acting AG. The application to the district court for Wiretap 2 referred to DAAG Miner as the authorizing DOJ official, and Wiretap 2 was issued on December 11, 2018, by the district court. (Mot. to Suppress at 5; WT-18-6-PHX-GMS.)

## II.     LEGAL STANDARDS

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") sets out the procedure for securing judicial approval for wiretaps in the investigation of certain serious offenses. *United States v. Giordano*, 416 U.S. 505, 507 (1974). This procedure reflects Congressional recognition that wiretaps compromise privacy interests and, thus, require close evaluation of their necessity and permissibility. *United States v. King*, 478 F.2d 495, 503 (9th Cir. 1973).

Title III requires wiretap applicants to seek review and approval from both the executive and judicial branches. *United States v. Staffeldt*, 451 F.3d 578, 580 (9th Cir. 2006). From the executive branch, the applicant must receive approval from a DOJ official specifically listed in the authorization statute. 18 U.S.C. § 2516(1). Those officials are: (1) the AG; (2) the Deputy AG; (3) the Associate AG; (4) any Assistant AG ("AAG"); (5) any Acting AAG; (6) any DAAG or Acting DAAG in the Criminal Division specially designated by the AG; or (7) any DAAG or Acting DAAG in the National Security Division specially designated by the AG. *Id*. Accordingly, only after DOJ approval may a wiretap applicant submit an application to the court for approval. *Staffeldt*, 451 F.3d at 580.

Typically, AGs specially designate DAAGs via special designation orders. (Mot. to Suppress at 11.) These orders comport with the statutory requirement that the AG "specially designate[]" certain DAAGs before they are allowed to approve wiretap applications. *See United States v. Torres*, 908 F.2d 1417, 1421–22 (9th Cir. 1990).

Therefore, a DAAG covered by a special designation order and falling within a division included in the authorization statute is permitted to approve wiretap applications. *Id*. When approving an application for submission to the court, the DOJ official includes, if applicable, the special designation order granting his authority in a memorandum. This memorandum is included in the wiretap application to the district court and becomes part of the wiretap application. *See United States v. Callum*, 410 F.3d 571, 576 (9th Cir. 2005).

Congress has provided for evidentiary suppression in some cases where the Government fails to comply with the applicable wiretap restrictions and procedures. An "aggrieved person" may seek suppression of evidence obtained from intercepted wiretap communications if: "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a)(i)–(iii). The suppression remedy also applies to evidence "derived" from an unlawful or procedurally improper wiretap. 18 U.S.C. § 2518(10)(a). This suppression remedy is statutory and separate from the judicially-crafted exclusionary rule aimed at deterring violations of the Fourth Amendment. *See Giordano*, 416 U.S. at 524.

An unauthorized wiretap application is not a minor defect. *See Staffeldt*, 451 F.3d at 579. An application that has not been authorized by the DOJ cannot support the issuance of a wiretap order by the court. *Id*. Failure to obtain approval for an application from an official described in the authorization statute "renders the court authority invalid and the interception of communications pursuant to that authority 'unlawful' within the meaning of 18 U.S.C. § 2518(1)(a)(i)." *United States v. Chavez*, 416 U.S. 562, 571 (1974). In light of the significant procedural barriers in seeking approval for a wiretap application, the authorization statute is not loosely interpreted and requires strict compliance. *King*, 478 F.2d at 503–05.

. . . .

. . . .

## III. ANALYSIS

Defendant presents a straightforward argument in favor of suppression of the evidence obtained and derived from Wiretap 2. Defendant's argument is that on December 7, 2018, when DAAG Miner approved the application for Wiretap 2 for submission to the court, he did not have authority to approve applications for wiretaps. (Mot. to Suppress at 17.) Essentially, Defendant argues that DAAG Miner was not specially designated by the AG consistent with the requirements of the authorization statute.

Defendant bases this argument on several related factual occurrences that he argues caused the AG Sessions Order, which purportedly granted DAAG Miner authorization to approve wiretap applications, to lapse. Defendant foremost argues that the AG Sessions Order automatically lapsed when AG Sessions left office on November 7, 2018. (*Id*. at 17.) According to Defendant, the AG Sessions Order was "automatically revoked" when AG Sessions left office. (*Id*. at 20.) Thus, Defendant argues that DAAG Miner's authority one month later to approve wiretap applications was based on an "expired" designation order, so he did not actually have authority to approve applications since the AG who granted him that authority was no longer in office. (*Id*. at 17.)

Defendant's interprets the authorization statute as precluding the continued effectiveness of special designation orders beyond the administration of the authoring AG. (*Id*. at 20.) According to Defendant, such continued effectiveness would be inconsistent with Congressional intent. (*Id*. at 20.) Defendant further argues that designation orders can be revalidated and effective if done so in a timely fashion, *i.e.*, before a DAAG approves a wiretap application while relying on an expired special designation order. (*Id*. at 20–21.) But Defendant claims no such revalidation happened here, since Acting AG Whitaker did not revalidate the AG Sessions Order and did not issue any new special designation orders before DAAG Miner approved the application for Wiretap 2. (*Id*.) Finally, Defendant argues that the AG Barr Order came too late to have any effect here since Wiretap 2 had already issued based on the expired AG Sessions Order months before.[2] (*Id*.)

---

[2] Defendant also argues that the AG Barr Order did not revalidate the AG Sessions

- 5 -

In response, the Government contends that the doctrine of administrative continuity prevented the AG Sessions Order from lapsing until it was explicitly revoked by the AG Barr Order on March 25, 2019. (Resp. at 9.) According to the Government, administrative continuity provides that specially delegated individuals who were authorized to approve wiretap applications by an AG who has left office continue to be qualified until the special delegation order is revoked or altered. (*Id*. at 10.) Thus, the Government argues that DAAG Miner remained specially delegated to approve wiretap applications even after AG Sessions resigned since the AG Sessions Order had not expired or lapsed when DAAG Miner approved the application for Wiretap 2. Consequently, the Government contends that neither evidence intercepted by Wiretap 2, nor any evidence derived from Wiretap 2 should be suppressed.[3]

For the reasons that follow, the Court rejects Defendant's arguments and finds that suppression is not required. Despite Defendant's arguments to the contrary, administrative continuity applies here. When DAAG Miner approved the application for Wiretap 2, he had been specially designated by AG Sessions consistent with the authorization statute. The AG Sessions Order did not lapse or expire when AG Sessions left office. Nor did it lapse before DAAG Miner's approval of the application for Wiretap 2. Therefore, Wiretap 2 was approved consistent with the authorization statute and communications from Wiretap 2 were not "unlawfully intercepted" under 18 U.S.C. § 2518(10)(a)(i)–(iii).[4]

---

Order. (Mot. to Suppress at 20–21.) However, the AG Barr Order is inconsequential to the Court's analysis since the AG Sessions Order remained effective via administrative continuity when DAAG Miner approved the Wiretap 2 application. Therefore, the AG Barr Order was inconsequential to DAAG Miner's authority at the relevant time.

[3] The Government also argues that even if suppression is required under 18 U.S.C. 2518(10)(a)(i), that remedy does not apply to intercepted text messages. (Resp. at 4.) The Court does reach this argument because the Court concludes that suppression is not required under 18 U.S.C. 2518(10)(a)(i).

[4] In his Reply, Defendant argues that his challenge to DAAG Miner's authority includes a facial insufficiency claim under 18 U.S.C. § 2518(10)(a)(ii). Defendant argues that "[o]n its face, the [AG Sessions Order], which is part of the wiretap application, was expired. The power of [] DAAG [Miner] therefore was as well." (Reply at 10.) The Court rejects Defendant's argument. Defendant does not provide any support or explanation for his argument besides the fact that "[a] facial review described an expired order issued by someone who was no longer AG." (*Id*.) But on its face, the AG Sessions Order gave no impression that it was expired.

- 6 -

**A.     The Ninth Circuit Court of Appeals has not rejected the administrative continuity doctrine.**

Defendant and the Government disagree over whether the Ninth Circuit has rejected administrative continuity in this context. Defendant's argument is based on his reading of *United States v. Camp*, 723 F.2d 741, 744 (9th Cir. 1984), a case Defendant interprets as originating "[t]he Ninth Circuit's rejection of the administrative continuity rule." (Mot. to Suppress at 15.) In short, Defendant's reading of *Camp* is incorrect because the Ninth Circuit clearly found that administrative continuity was irrelevant in that case. *See Camp*, 723 F.2d at 744.

In *Camp*, the issue initially appeared to be that the wiretap application in that case was not authorized by a specially designated AAG because the AAG's authority came from an AG who was no longer in office when the AAG approved the application. *Camp*, 723 F.2d at 743. However, the Ninth Circuit observed that the previous AG's order had been revalidated by the current AG before the wiretap application had been approved. *Id*. Thus, the AAG had been specially delegated consistent with the authorization statute and was authorized to approve wiretap applications during the period at issue in that case. The only issue was whether the AG was allowed to specially delegate AAGs by title rather than by individual name. The Court specifically found that administrative continuity was not relevant. *Id*. at 744.

Defendant's misreading of *Camp* stems from a failure to appreciate that administrative continuity was not relevant to the case at all. The Ninth Circuit was not faced with a decision about whether administrative continuity applied or not. The doctrine was not relevant because the wiretap at issue had been authorized by an AAG who received authority to approve applications from the current AG via revalidation of a previous order. To the extent Defendant views the Ninth Circuit as having affirmatively passed on administrative continuity as a means to decide the case, he is incorrect. (Reply at 7.) Administrative continuity was not an available path in *Camp*, and was not rejected, as Defendant suggests.

**B.      Due to administrative continuity, the AG Sessions Order remained valid after AG Sessions resigned.**

The Court finds that administrative continuity applies here. The AG Sessions Order did not automatically lapse when AG Sessions resigned. Instead, it remained effective until it was revoked by AG Barr on March 25, 2019. DAAG Miner was specially delegated to authorize wiretap applications consistent with the authorization statute since he had been specially delegated by AG Sessions and remained authorized when he approved the application for Wiretap 2 on December 7, 2018. Therefore, Wiretap 2 was granted consistent with the authorization statute, and the evidence gathered from the Wiretap need not be suppressed under 18 U.S.C. § 2518(10)(a)(i)–(iii). Derivative evidence also need not be suppressed under 18 U.S.C. § 2518(10)(a).

Despite Defendant's arguments to the contrary, the Court finds that the weight of authority and the purported Congressional purpose of the wiretap regime are consistent with application of administrative continuity here. Several Circuit Courts of Appeals and district courts within the Ninth Circuit have decided similar cases against Defendant's position. *United States v. Wyder*, 674 F.2d 224, 227 (4th Cir. 1982); *United States v. Lawson*, 780 F.2d 535, 539 (6th Cir. 1985); *United States v. Kerr*, 711 F.2d 149, 150–51 (10th Cir. 1983); *United States v. Messersmith,* 692 F.2d 1315, 1317 (11th Cir. 1982); *United States v. Anderson*, 39 F.3d 331, 340–41 (D.C. Cir. 1994); *United States v. Lopez*, No. CR 06-0046-DDP, 2008 WL 2156758 at *2 (C.D. Cal. May 19, 2008); *United States v. Orozco*, 630 F. Supp. 1418, 1532–33 (S.D. Cal. 1986). Further, Defendant does not provide compelling arguments for why DAAG Minor or his superiors are any less politically accountable because his special delegation came from AG Sessions rather than acting AG Whitaker. The Court is also unpersuaded by his argument that a plain reading of the authorization statute forecloses administrative continuity.

. . . .

. . . .

. . . .

1. **Authority from several Circuit Courts of Appeals and district courts within the Ninth Circuit undermine Defendant's position that the AG Sessions Order automatically lapsed when he resigned.**

With seeming unanimity, several Circuit Courts of Appeals and district courts in the Ninth Circuit that have considered Defendant's argument in this case have rejected it. The Fourth, Sixth, Tenth, Eleventh, and DC Circuits have encountered essentially identical issues that Defendant raises and have determined that administrative continuity applies. Similarly, district courts in the Ninth Circuit in comparable cases have concluded that administrative continuity applies. Despite Defendant's attempts to distinguish some of these cases, the Court is unpersuaded that administrative continuity does not apply in this context.

The Fourth, Sixth, Tenth, Eleventh, and DC Circuits have rejected Defendant's argument and found that administrative continuity applies in nearly identical circumstances. In *Wyder*, a wiretap application was approved by an AAG who was specially designated to approve wiretaps by a previous AG. *Wyder*, 674 F.2d at 226–27. When the AAG approved the wiretap application at issue, the current AG had not revoked or renewed the previous designation order. *Id*. Still, the Fourth Circuit held that there was no basis to conclude that the usual rule—administrative continuity—did not apply. *Id*. Accordingly, the AAG still had authority to approve the wiretap application despite no revalidation from the current AG. Similarly, in *Lawson*, the Sixth Circuit found that an AAG had authority to approve wiretap applications based on the special designation of a previous AG, despite the fact that the current AG had not revalidated or revoked the previous designation. *Lawson*, 780 F.2d at 539. The Tenth Circuit in *Kerr*, under similar circumstances held, "in our opinion, when the authority to authorize applications for wiretaps has been validly delegated to a person in a particular position, as we are concerned with here, it continues so long as that person remains qualified. There was no limitation in the delegation of authority, and the statute contains no express limitations nor language from which one could be implied." *Kerr*, 711 F.2d at 150–51. The Eleventh Circuit in

*Messersmith*, under nearly identical circumstances to this case, held that, "the usual rule that the act of an administrative official continues in effect until it is revoked[,]" applies. *Messersmith*, 692 F.2d at 1317. Finally, the DC Circuit held in *Anderson*, in practically identical circumstances as this case, that administrative continuity allows special designations to continue for some time without revalidation. *Anderson*, 39 F.3d at 340–41.

Defendant does not address *Wyder* but attempts to distinguish the remaining cases. However, the Court is unpersuaded by Defendant's arguments. Defendant attempts to distinguish *Kerr*, and apparently, *Lawson*, by arguing that those were cases where the special designation order had been revalidated before the wiretap applications were approved by the relevant DOJ official. (Mot. to Suppress at 17–18.) Thus, Defendant argues automatic lapse was not actually at issue in those cases since there was a timely, revalidated special designation order in place before the wiretaps were approved. (*Id*. at 17.) The Court rejects these arguments. Though there was new authority granted to the official in *Kerr*, that fact was not relevant to the Tenth Circuit since the application was approved in reliance on authority from the previous AG, and the court decided the case on the basis of administrative continuity. *Kerr*, 711 F.2d at 150–51. Similarly, in *Lawson*, the Sixth Circuit decided the case on the basis of administrative continuity. *Lawson*, 780 F.2d at 539. It does not appear that there was a revalidation of the prior order in *Lawson* before the wiretap application was approved. *Id*. Defendant also attempts to distinguish *Kerr* and *Messersmith* by arguing "the issue [in those cases] was whether a new designation order that named an official by job title rather than name provided proper revalidation for an expired order in which the designated official had originally been specified by name and had remained in that position." (Mot. to Suppress at 18.) Again, the Court disagrees as the central issue in both cases was whether a special designation order that had not been revalidated before the wiretap applications had been approved could provide authority for the named officials to approve wiretap applications via administrative continuity. Both Courts determined the orders could provide authority, even without revalidation by the current AG. *Kerr*, 711 F.2d at 150–51; *Messersmith*, 692 F.2d at 1317.

Defendant also attempts to distinguish *Lawson*, *Camp*, and *Kerr* by emphasizing that the specially designated official in those cases was an AAG and not a DAAG. (Mot. to Suppress at 18.) And he further seeks to distinguish *Anderson* by reiterating his argument, which the Court rejects, that the Ninth Circuit has not endorsed administrative continuity in this context. (Reply at 7–9.) Defendant's argument appears to be that DAAGs are not politically responsive to the political process in the same way as AAGs since DAAGs are not politically appointed. *Id*.

Defendant's argument stems from his view that *Giordano* emphasizes the need for wiretap-approval authority to be limited those specifically listed statutory officials who are responsive to the political process. (Mot. to Suppress at 13.) *Giordano*, 416 U.S. at 513–23. However, in *Wyder* and *Messersmith*, the courts recognized that "*Giordano* did establish the number of persons who have the power to seek a federal judge's authorization to wiretap, but it did not decide the question presented today: the lifespan of a properly made designation." *Wyder*, 674 F.2d at 227; *Messersmith*, 692 F.2d at 1317 *citing Wyder*, 674 F.2d at 227.  In *Wyder*, the court stressed, "[t]he more significant flaw in the defendant's argument is that the signature on the written designation has next to nothing to do with the nature of the delegation. The defendant cannot rationally maintain that [the AAG] was exercising his authority without the knowledge and consent of [current] Attorney." *Wyder*, 674 F.2d at 227. Similar to *Wyder* and *Messersmith*, Defendant cannot maintain that DAAG Miner was exercising authority without the knowledge and consent of Acting AG Whitaker. Thus, *Giordano* concerns who may be specially delegated authority to approve wiretap applications, but not how long such delegations remain effective. *Id*. It is an official's inclusion in the authorization statute that guarantees political accountability and not, if applicable, any specific AG's special delegation to approve wiretap applications. The Court adopts the reasoning of *Wyder* and *Messersmith* and finds that Defendant does not provide any compelling reason why administrative continuity should apply for AAGs as the several Circuit Courts of Appeals have found, but not DAAGs.

Finally, district courts within the Ninth Circuit have found that administrative continuity applies to special designation orders despite the designating AG leaving office. In *Lopez*, a DOJ official approved a wiretap based on the special delegation of a previous AG despite a new AG having taken office who had not yet revoked or revalidated the previous order. *Lopez*, No. CR 06-0046-DDP, 2008 WL 2156758 at *2. The district court found that the defendant's argument that the special delegation automatically lapsed when the previous AG left office "has been roundly rejected. An [AG's] resignation does not by itself render orders signed prior to the resignation ineffective, nor void the authority of the [AG's] designees." *Id.* Similarly, in *Orozco*, the defendant argued that the special designation of an AAG was infirm because the President had begun a second term and the AG who specially delegated the AAG during the President's first term had not revalidated the order before the wiretap application was approved by the AAG during the President's second term. *Orozco*, 630 F. Supp. at 1532–33. But the court found that "[w]hen an administrative official leaves office, orders enacted during his or her tenure in office remain in effect until revoked or altered by his or her successor." *Id.* at 1533. The court additionally found that "[t]he purpose of limiting wiretap authorization to an official sensitive to the concerns of, and accountable, to the Chief Executive and the legislature is not defeated by one administrative official's reliance on the procedures imposed by a predecessor. Indeed, to require otherwise would impose an overwhelming and unnecessary burden on the administrative process." *Id.*

Ultimately, the Court finds that administrative continuity applies here and DAAG Miner was specially delegated to approve wiretap applications consistent with the authorization statute when he approved the application for Wiretap 2. The weight of authority within and outside the Ninth Circuit support the Court's determination.

**2.     A plain reading of the authorization statute does not foreclose the application of administrative continuity here.**

Defendant argues that a plain reading of the authorization statute shows that DAAG Miner did not have statutory authority to approve Wiretap 2. Defendant's argument focuses

- 12 -

on the statute's provision that special designations are made by "*the* [AG]" rather than "*an* [AG]." (Mot. to Suppress at 20.) (emphasis added). Based on this distinction, Defendant argues that the authorization statute requires that an official who is specially designated be designated by the current AG before he can approve wiretap applications. (*Id*. at 20.) Defendant also argues that a previous special designation order could be revived by a successor AG like in *Camp*. (*Id*.) However, Defendant does not explain how such a revalidation is consistent with his reading of the authorization, which would require special designation, and not revalidation, by the current AG. Defendant argues the authorization statute indicates that a special designation requires something more than a blanket designation, which he asserts occurs when a prior designation order extends beyond the term of the AG who authored it without express revalidation. (*Id*. at 21)

The Court is unpersuaded by Defendant's arguments and finds that the statute is consistent with the application of administrative continuity in this case. As the Tenth Circuit recognized in *Kerr*, the language of the statute does not provide any express limitation that would indicate a special delegation automatically lapses when the delegating AG leaves office. *Kerr*, 711 F.2d at 150–51. Nor does it provide language allowing the Court to imply that special designation orders automatically lapse upon the end of the authoring AG's term. *Id*. The Court agrees. The language of the statute is perfectly consistent with an interpretation that a special delegation lasts at least until it is revoked or altered in some way.[5]

## IV.  CONCLUSION

The Court finds that when DAAG Miner approved the application for Wiretap 2, he had been specially delegated to approve wiretap applications consistent with the authorization statute. Due to administrative continuity, the special delegation DAAG Miner received from former AG Sessions on February 27, 2017, remained effective when DAAG Miner approved the application for Wiretap 2. The Court rejects Defendant's arguments

---

[5] To the extent Defendant argues that the AG Sessions Order lapsed after an unreasonable amount of time, his argument is flawed. (Mot. to Suppress at 19.) The authorization statute does not expressly or impliedly include a time lapse provision.

that the Ninth Circuit has implicitly rejected administrative continuity in this context. The Court also rejects Defendant's arguments that the language of the authorization statute is inconsistent with administrative continuity. Accordingly, the Court finds that suppression of neither evidence intercepted via Wiretap 2, nor evidence derived from Wiretap 2, is required under 18 U.S.C. § 2518(10)(a)(i)–(iii).[6]

**IT IS THEREFORE ORDERED** denying Defendant Hector Ibarra-Cisneros's Motion to Suppress All Directly and Derivatively Obtained Wiretap Evidence (Doc. 149).

Dated this 12th day of April, 2021.

Honorable John J. Tuchi
United States District Judge

---

[6] Since the Court finds that suppression is not required under 18 U.S.C. § 2518(10)(a)(i)–(iii), the Court need not evaluate the Government's arguments that text messages intercepted via Wiretap 2 are not subject to suppression under 18 U.S.C. § 2518(10)(a)(i)–(iii). (Resp. at 4–6.)